## NORTON *v.* HOOD.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

Argued December 14, 1887. — Decided January 9, 1888.

In a suit in equity by an assignee in bankruptcy to set aside transfers of land by the bankrupt, alleged to have been made in fraud of his creditors, this court held that the allegations of the bill were not established.

BILL IN EQUITY. The complainant appealed from the final decree. The case is stated in the opinion of the court.

*Mr. J. D. Rouse* and *Mr. E. H. Farrar,* for appellant submitted on their brief.

*Mr. John A. Campbell* for the executors of Frellsen, one of the appellees.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

On the 15th of February, 1862, Govy Hood, a planter residing in the parish of Carroll, in the State of Louisiana, made his seven promissory notes, payable to the order of the mer-

cantile firm of Frellsen & Stevenson, of New Orleans, composed of Henry Frellsen and John A. Stevenson, for the aggregate amount of $39,019.49, all the notes bearing interest at the rate of 8 per cent per annum from their maturity respectively until paid, and being for the following several amounts and due at the following dates: October 15, 1862, $5273.33; November 3, 1862, $5291.11; November 17, 1862, $5307.88; December 3, 1862, $5327.77; December 13, 1862, $5338.89; December 20, 1862, $5346.66; and January 10, 1863, $7133.85.

The firm of Frellsen & Stevenson was dissolved in December, 1865, and the seven notes became the property of Frellsen. On the 2d of April, 1866, Frellsen commenced a suit in the Thirteenth Judicial District Court of the State of Louisiana, in and for the parish of Carroll, against Hood, to recover the amount of the seven notes, with interest, and the further sum of $300, with interest from March 24, 1862, alleged to be the amount of premiums paid on the insurance of Hood's ginhouse and machinery. A judgment was entered in the suit, in favor of Frellsen, on the 2d of April, 1866, founded upon a confession dated February 13, 1866, signed by Hood and accompanying the petition, in the following words: "I accept service of this petition and waive citation, and agree to confess judgment for the amount as above set forth, say, the sum of thirty-nine thousand three hundred and nineteen dollars and forty-nine cents, and interest and cost, as prayed for, with the understanding that no execution is to issue on said judgment for one year from this date, when, if I pay $3000 upon said judgment, there shall be a further stay of execution for one year more; when, if I pay one-fourth of the whole amount of the balance of said judgment, there is to be a stay of execution for one year more; when, if I pay one-third of the balance, there is to be a further stay of execution for one year more; when, if I pay one-half the balance, there is to be a further stay of execution for one year more; when execution may issue for the balance, it being understood that execution is not to be stayed if I fail to make any of said payments punctually."

The judgment was in the following terms: "It is ordered, adjudged, and decreed, that the said plaintiff recover of the said defendant the sum of thirty-nine thousand three hundred and nineteen dollars and forty-nine cents, with interest at the rate of 8 per cent per annum on $5273.33 of said amount from 15 October, 1862; and same interest on $5291.11 from 3 November, 1862; and the same interest on $5307.88 from 17 November, 1862; and same rate of interest on $5327.77 from 3 December, 1862; and the same interest on $5338.89 from 13 December, 1862; and the same interest on $5346.66 from 20 December, 1862; and the same interest on $7133.85 from 10th day of January, 1863, until paid, and all costs; and that there be a stay of execution on the judgment until the 13th February, 1867; when, if the said Hood pays upon the judgment $3000, there shall be a further stay of execution until the 13th of February, 1868; when, if the said Hood punctually pays one-fourth of the amount of the judgment then due, there shall be a further stay of execution thereon to the 13th of February, 1869, when if the said Hood punctually pays one-third the balance then due, there shall be a further stay of execution thereon to the 13th of February, 1870; when, if the said Hood punctually pays one-half the balance then due, there shall be a further stay of execution until the 13 February, 1871; when execution may issue for the balance; and it is further ordered, by consent of parties, that, upon failure of said Hood to punctually pay any of the instalments as stated, execution may issue for the whole amount of the judgment, or the balance then unpaid."

Hood having made default in complying with the terms of the judgment, a *fi. fa.* was issued by the court to the sheriff of the parish, on the 22d of July, 1868, to collect the full amount of the judgment, with interest until paid, "by seizure and sale of the property, real and personal, rights and credits, of Govy Hood, in the manner prescribed by law." On the 23d of July, 1868, Hood signed the following endorsement upon the *fi. fa.:* "I accept service of notice of seizure, after pointing out to the sheriff the lands described on the reverse hereof, in this case."

On the 5th of September, 1868, the sheriff made a return to the *fi. fa.*, setting forth that he had received it on the 22d of July, 1868, and had, on the 23d of July, 1868, seized three plantations situated in the parish, and pointed out by the defendant, namely, (1) the Black Bayou Place, of 840 acres, (2) the Home Place, of 1500 acres, and (3) the undivided half of the plantation known as the Hood and Wilson Place, containing in the aggregate 700 acres; that notice of the seizure had been waived by Hood on the 23d of July, 1868; that, on the 25th of July, 1868, the sheriff advertised the property in a weekly newspaper named, published in the parish, to be sold on the 5th of September, 1868, for cash; and that he had sold the property on that day, at public auction, to Frellsen, for the sum of $24,210, that being two-thirds of the appraised value of the lands. On the 5th of September, 1868, the sheriff executed a deed, selling and adjudicating to Frellsen all the right, title, interest, and claim which Hood had to said property.

On the 23d of November, 1868, a second *fi. fa.* was issued by the court for the collection of the amount of the judgment, with interest, subject to a credit of $24,210. On the same day, Hood signed a waiver of notice of seizure and advertisement, except by posting in three public places from that date, and a consent that the property seized might be sold on the 5th of December, 1868. To this second *fi. fa.* the sheriff made return that he had received the writ on the 23d of November, 1868, and on the same day had seized certain described land, containing in all 1992.75 acres, and had, on the same day, advertised it to be sold on the 5th of December, 1868, by posting advertisement in three public places in the parish, and had, on the 5th of December, 1868, sold it, at public auction, to Frellsen, for $664.27, and credited that amount on the execution.

After receiving the deed of September 5, 1868, Frellsen entered into an agreement for the sale of his judgment and mortgage rights to persons named Dean and Pearce; but the transaction fell through, resulting in a suit brought by Dean and Pearce against Frellsen, which ultimately terminated in favor of Frellsen, and is reported as *Dean* v. *Frellsen*, 23 La. Ann. 513. After the agreement of Frellsen with Dean and

Pearce fell through, a written contract was made between Frellsen and Hood, on the 26th of October, 1868, in the following terms:

"It has been agreed between Henry Frellsen, of the city of New Orleans, and Govy Hood, of the parish of Carroll, Louisiana, as follows:

"Whereas the said Frellsen did, on the 5th September last, purchase at sheriff's sale, under an execution issued upon a judgment obtained by him in the District Court of said parish against the said Hood for the sum of thirty-nine thousand three hundred and nineteen $\frac{49}{100}$ dollars, with interest as stated therein, certain property belonging to said Hood, consisting of lands and plantations, as follows: The plantation on Lake Providence occupied by said Hood, known as the Home Place, and the plantation on said Lake Providence, known as the Black Bayou Place, and also the undivided half of the plantation known as the Hood & Wilson Place, and certain lots and lands adjoining, all which are described in the act of sale made by the sheriff of Carroll to said Frellsen and of record;

"And whereas the said Frellsen does not desire to speculate on the said Hood, or to take any advantage of him or his family, or to do more than to secure the balance due him on his said judgment, after crediting the same with the amount of the sale of the property on said lake, known as the Wilson Place, and sold under a mortgage and judgment held by said Frellsen against Geo. G. Wilson;

"Now, the said Frellsen hereby stipulates and promises as follows: That he will sell and transfer the above named property to the said Hood, or to his assigns, without any warranty, however, of any nature, as to the title to said property or the encumbrances upon it, of all which said Hood is fully informed, upon condition that said Hood, or his assigns, as the case may be, punctually pay said Frellsen the balance due upon his said judgment, less the credit above stated, as follows: Seven thousand dollars on or before the 15th day of December next, and eight thousand dollars annually from that date for four years, and the balance at the end of five years from the 15th December next, and also all costs and expenses attending said sheriff's

sale, and other incidental expenses attending this arrangement, and all taxes now due or which may become due hereafter on said property, and also pay to Sparrow and Montgomery two thousand five hundred dollars, in four equal annual payments, from 15th December next, with 8 per cent interest thereon from that date, it being understood that the failure of the said Hood or his assigns to punctually pay any of the amounts above stated at the dates fixed is to operate as a discharge and to release the said Frellsen from all his obligations hereon. The costs and expenses named above are to be paid on or before the 15th December next.

"The said Frellsen agrees further that he will lease to said Hood, or to his assigns, the said property, from year to year, whilst this agreement is in force, until he is paid in full, for such annual rent as he may think just, not, however, to exceed $8000 a year, with the understanding that he will credit the rent which may be paid him upon the yearly instalments as above stated; and, further, that if the said Hood or his assigns fail to pay punctually any of the annual instalments as above stated, after having paid one or more of them, and this agreement has become null and void thereby, the said Frellsen will pay back to him or his assigns any surplus remaining, after deducting all interest which might accrue on the said above named judgment from this date.

"Witness our hands this 26th day of October, 1868.

"HENRY FRELLSEN,
"By his att'y-in-fact, EDW. SPARROW.
"GOVY HOOD.
"HENRY FRELLSEN."

Hood failed to pay the amount provided to be paid on the 15th of December, 1868. On the 29th of December, 1868, he filed a voluntary petition in bankruptcy, in the District Court of the United States for the District of Louisiana, and was adjudged a bankrupt on the 26th of January, 1869. Emory E. Norton was appointed his assignee in bankruptcy, and the usual assignment was made to Norton. Hood received his discharge in bankruptcy on January 27th, 1871.

In the latter part of the year 1869, Frellsen sold and conveyed the Black Bayou Plantation to one Alling for the sum of $32,000, upon a credit. He had also collected $2212 on the sale of the Wilson Place, mentioned in the agreement of October 26, 1868, and had received, as proceeds of cotton grown on the plantations after the seizure and sale of 1868, and accepted by him in payment of rent, $5598.92. On the 1st of May, 1871, an account current was stated between Hood and Frellsen, charging Hood with the amounts of the seven notes dated February 15, 1862, and with the $300 for the insurance premiums, and with interest on those amounts to the 13th of February, 1866, making due on the last named date $49,921.52, and charging him with interest thereon to January 14, 1869, viz.; $11,648.85, and with the sheriff's fees on the sale of the property, $237, making a total amount due by him, January 14, 1869, of $61,807.37. The account credited him, on the last named date, with the proceeds of the cotton, $5598.92 leaving a balance due on that date of $56,208.45. It then charged him with interest on that amount to January 1, 1870, namely, $4320.38, making the amount due on the last named date $60,528.83. It then credited him, on that date, with $32,000 as the proceeds of the sale of the Black Bayou Plantation, and with $2212 collected on the Wilson note, leaving due, January 1, 1870, $26,316.83, to which was added, for the taxes of 1869, $721.50, and interest to May 1, 1871, $3113.68, making due on the last named date, by Hood to Frellsen, $30,152.03.

On the 1st of May, 1871, Frellsen executed a deed to Hood, conveying to him (1) the Home Place, containing 1500 acres, (2) the south half of the Hood and Wilson Place, containing 346 acres, (the Hood and Wilson Place having been partitioned between Frellsen and the Wilson heirs in May, 1870, and the south half of it, containing 346 acres, having been set off to Frellsen,) and (3) the 1992.75 acres, for the consideration of $30,152, (being the amount stated to be due by the amount current,) payable in six equal annual instalments, for which Hood gave six notes for $5025.33 each, bearing 8 per cent interest from May 1, 1871, payable respectively at one,

two, three, four, five, and six years after date, to the order of Frellsen. The conveyance, which was executed also by Hood, declared that Hood specially mortgaged and hypothecated to Frellsen all the property so conveyed, and contained a pact *de non alienando.* Hood went into possession of the property, but did not make any payments upon any of the notes.

On the 24th of December, 1874, Frellsen obtained from the Thirteenth Judicial District Court for the parish of Carroll an order of executory process, in a suit then brought by him in that court against Hood, ordering the seizure and sale of the property covered by the instrument of May 1, 1871. Notice of the order was served upon Hood. Thereupon, Hood commenced a suit by petition against Frellsen in the same District Court. The petition alleged that certain credits ought to be allowed on the six notes, which sums the petitioner pleaded in compensation and payment of the claim of Frellsen. The petition also prayed for an injunction against further proceedings in the seizure and sale of the property, and for a judgment that the six notes were paid, and for a further judgment in favor of Hood against Frellsen for $8000, as the amount due him by Frellsen in excess of the notes. By an amended petition, Hood prayed a trial by jury. He also filed another amended petition, in which he set forth that the sale under the executions on the judgment of April 2d, 1866, was in effect a consent conveyance; that it was agreed that Frellsen should take title to the property as security for his debt; that Hood was to continue to reside on the Home Place as before, which he did; that Frellsen was to lease out the land and collect the rents, and credit Hood with the amount on the indebtedness evidenced by the judgment; that it was also agreed that Hood should have the right to negotiate a sale of the property, and Frellsen should pass the title, and collect the price, and credit Hood with the amount on the judgment debt; that, accordingly, the Black Bayou Place was conveyed to Alling for $32,000; that Frellsen was to reconvey to Hood the legal title to the remainder of the property after the payment of the judgment; that, in pursuance of such agreement, Frellsen, in May, 1871, reconveyed such title to Hood; that,

at that time, Hood was induced by the agent of Frellsen to sign the mortgage notes, whereas in fact he did not then owe Frellsen anything ; that he was old, ignorant, feeble in body and mind, and broken down and crushed by his misfortunes and losses in the war; and that the entire business, as well as the bankruptcy proceedings, were gotten up by the agent of Frellsen, in the interest of Frellsen and said agent, for the purpose of defeating other creditors of Hood and of defrauding him.

On the commencement of the suit by Hood, he obtained an injunction forbidding a sale by Frellsen. Frellsen answered the petition, denying its allegations, averring that Hood had received all the credits to which he was entitled, and set up as a defence the fact that Hood had been discharged in bankruptcy on the 27th of January, 1871. The State District Court, in December, 1878, sustained the petition of Hood, so far as to reduce the amount due by him on May 1, 1871, to $6564.06, with interest at 8 per cent per annum from that date, less a credit thereon of $1200, to take effect from January 1, 1872. On an appeal taken by Frellsen to the Supreme Court of Louisiana, that court, in May, 1879, reversed the judgment of the lower court, and gave judgment in favor of Frellsen, rejecting the demand of Hood and dissolving the injunction. *Hood v. Frellsen*, 31 La. Ann. 577.

Norton, the assignee in bankruptcy of Hood, then filed the bill in equity in this suit, in the District Court of the United States, for the District of Louisiana, against Hood and Frellsen and one Asberry, sheriff of the parish of East Carroll. The bill set forth that Hood was insolvent during the whole of the years 1866, 1867, and 1868 ; that Frellsen advised Hood to go into bankruptcy and relieve himself of his debts ; that the confession of judgment by Hood, the issuing of executions upon it, the sales at auction of the four parcels of land to Frellsen, and the conveyance of May 1, 1871, by Frellsen to Hood, were fraudulent simulations, for the purpose of enabling Hood to put his property beyond the reach of his creditors and of enabling Frellsen, by means of an unlawful preference, to obtain payment of his claim in full; that, to that end, it was agreed that Frellsen should nominally execute the confessed judgment, and

should nominally buy in all the property of Hood, and should hold the same until after Hood should have obtained his discharge in bankruptcy, and then a reconveyance should be made to Hood; that Hood should remain in possession and control of the properties, and they should be his, he being liable for all taxes, costs, and expenses, and entitled to all the rents and revenues and the proceeds of sales; that the agreement on the part of Frellsen was that he was simply to receive the amount of his judgment, principal, interest, and costs, in full, and was to be considered only as the nominal owner of the property; that the sheriff took no possession of the property under the *fi. fa.* of July, 1868; that, during the whole time Hood was in bankruptcy, from December 29, 1868, to January 27, 1871, he remained in possession of all the properties except the Black Bayou Place, and regularly paid the taxes, and was treated as the owner by Frellsen, who accounted to him for some of the rents and for the proceeds of the sale of the Black Bayou Plantation, by crediting them on the judgment, during the time when Hood was an undischarged bankrupt; that such fraudulent conspiracy between Hood and Frellsen was not known to the plaintiff until within a few weeks past; that the existence of the fraud was brought to light during the trial of the above named suit, brought by Hood against Frellsen, when the agreement of October 26, 1868, was first produced, in December, 1878; and that, in consequence of the dissolution of the injunction in that suit, Frellsen was proceeding to sell the Home Place and the Hood and Wilson Place under the executory process so issued by him. The bill prayed for a decree adjudging the plaintiff to be the owner, as assignee in bankruptcy, of all the properties above mentioned, from the time of the filing of the petition in bankruptcy, and entitled to recover the rents thereof; that the mortgage of May 1, 1871, made by Hood, might be cancelled; and that the sale under the executory process of Frellsen might be enjoined. On the filing of the bill, a restraining order was issued in accordance with its prayer.

Frellsen answered the bill, asserting the validity of the judgment confessed by Hood and of the executions issued thereon,

and of the purchases made by Frellsen at the auction sales. He denied the allegations that there was any pretended sale or simulated title, or any fraud or collusion at the sales or in the purchases.    He averred that the consideration for the agreement of October 26, 1868, and the motives for it, were set forth therein ; that the motives were a disposition to oblige and assist Hood by affording him an opportunity to reinstate himself, if he should find it practicable ; that the consideration was that Hood should pay with exact punctuality the debt owing by him, in the manner set forth in the agreement; that not one of the payments provided for by the agreement was made ; that the agreement ceased to be operative before any order was made on Hood's petition in bankruptcy ; that neither the plaintiff nor Hood had ever offered to pay the instalments of money mentioned in the agreement ; that, in 1868, 1869, 1870, and afterwards, the property was under the exclusive control of Frellsen and subject to his title and possession, as purchaser ; that Frellsen made no concealment of the agreement of October 26, 1868 ; that that agreement became inoperative and valueless by the discharge of Hood in bankruptcy ; that the conveyance and mortgage of May 1, 1871, were made after such discharge in bankruptcy ; and that the property specified in that mortgage was never within the possession, control, or authority of the District Court of the United States, or of the plaintiff.

A replication was filed to this answer and proofs were taken on both sides, and, on the 13th of June, 1881, the District Court entered a decree, that the judgment in favor of Frellsen against Hood in 1866, and the executions thereunder in 1868, with the sales and conveyances by the sheriff, were valid and operative; that no fraud, collusion, or malpractice was established against Frellsen ; that those proceedings entitled him to the property conveyed to him, discharged from any claim of the plaintiff ; that any surplus arising from the sale under the executory process in favor of Frellsen should not be paid to Hood, but should be paid to the complainant as assignee in bankruptcy ; that the injunction should be dissolved ; and that the sheriff should dispose, under the direction of the court, of

the surplus that might remain after paying the debt due to Frellsen, and the costs of suit.

The plaintiff appealed to the Circuit Court, which, on the 2d of February, 1884, affirmed the decree in favor of Frellsen, and dismissed the bill as against him, and remanded the cause to the District Court to enter such decree, and for such further proceedings against Hood, in favor of the plaintiff, as might be consistent with the equity of the bill, and proceedings against him personally. From that decree the plaintiff has appealed to this court.

We find no difficulty in holding that the decree of the Circuit Court was correct. The case made by the bill is not established. On the contrary, the answer of Frellsen is supported by the proofs. His acts and doings throughout appear to have been fair and honest. The debt due to him, as secured by the confessed judgment, was an honest debt. By means of his purchases at the auction sales on the executions, he became the absolute owner of the properties he bought. The agreement of October 26, 1868, does not contain or suggest anything fraudulent. It assigns fair and natural motives for the favor he was doing to Hood. Although the agreement was executed by Hood as well as Frellsen, it contains no covenants or stipulations on the part of Hood, and no agreement by Hood to pay the amounts mentioned in it, making up the balance due on the judgment. The only stipulations in it are those made by Frellsen. He does not, by the agreement, sell and transfer the property to Hood, but only stipulates that he will sell and transfer it on condition that Hood shall punctually make the payments specified in it; and it contains an express stipulation that the failure of Hood or his assigns to punctually pay any of the amounts stated, at the times fixed, is to operate as a discharge of Frellsen from all his obligations therein contained.

Hood wholly failed to take the benefit of this agreement, but, instead thereof, immediately after the first day of payment mentioned in it, he filed a petition in bankruptcy. By the terms of the agreement, all rights existing under it in favor of Hood had ceased prior to the filing of the petition in

bankruptcy, and there was no right growing out of the agreement which passed, or could pass, to the assignee in bankruptcy, as representing Hood, because, in that respect, the rights of the plaintiff attached only to rights which existed in favor of Hood at the time of the filing of the petition in bankruptcy. The only other right which the plaintiff could have, in his capacity as assignee in bankruptcy, was the right to reach property transferred by Hood in fraud of his creditors. As to that, the proof is that no property was transferred by Hood in fraud of his creditors, or taken by Frellsen in fraud of such creditors.

We see nothing to impeach the validity of the rights of Frellsen sought to be enforced by the executory process, and affirm the decree of the Circuit Court.

*Affirmed.*