IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 74,228






EX PARTE LAROYCE LATHAIR SMITH, Applicant






ON APPLICATION FOR A WRIT OF HABEAS CORPUS


FROM DALLAS COUNTY






 Holcomb, J., filed a concurring opinion in which Price, J., joined.



O P I N I O N



 I agree with the majority that the petitioner is not entitled to relief on habeas corpus. However,
I do so only because I am compelled by the facts to agree with the concurrence that Smith procedurally
defaulted the claim he now raises, that his nullification instruction was insufficient under Penry II, (1) 
precluding the jury from giving effect to his mitigating evidence. Smith did not object to the nullification
instruction during his trial in 1991. An objection at that time would not have been futile because this
Court had not yet addressed the issue. We addressed the issue in 1992 when we decided Fuller (2) and
held that a nullification instruction was sufficient under Penry I. Thus, I concur with the result. 
However, I am concerned regarding the application of procedural default in cases in which the
consequences are so dire and where the claim raised is meritorious. 

 I write to dissent to the majority's reasoning and resolution of Smith's claim on the merits. 
Under Penry I, a defendant is entitled to a supplemental instruction if there is mitigating evidence that is
(1) relevant to the defendant's moral culpability for the offense and (2) beyond the scope of the special
issues. The evidence Smith produced satisfied these two requirements. Therefore, he was entitled to a
supplemental instruction to provide the jury with a vehicle to consider and give effect to that evidence. 
The nullification instruction provided to Smith's jury contained the same defects the Supreme Court
identified in Penry II. Therefore, the jury was unconstitutionally precluded from considering and giving
effect to Smith's mitigating evidence. 

 The majority errs in choosing to adopt what is essentially the Fifth Circuit's Penry I construct
limiting the application of Penry I's holding to cases in which the evidence demonstrate a uniquely
severe permanent handicap. The majority also errs in finding Smith's nullification instruction to be
sufficiently distinguishable from Penry's that Smith's nullification instruction would provide a sufficient
vehicle under Penry I. Therefore, I dissent.

Penry I's Supplemental instruction requirement

 In general, the Court in Penry I recognized that when a defendant presents mitigating evidence
relevant to his personal moral culpability but not relevant to the special issues or relevant to the special
issues only as an aggravating factor, the special issues alone would not allow the jury to give effect to
the mitigating quality the evidence presented. (3) In that situation, the State must provide an additional
vehicle to the jury so that the jury may consider and give effect to the evidence. Therefore, the
defendant's mitigating evidence necessitates a Penry I instruction when: (1) the evidence is relevant to
the defendant's moral culpability, and (2) the mitigating quality of such evidence cannot be given effect
under the special issues alone. 

 Regarding the first requirement, with respect to Penry I claims, this Court has focused on
whether the evidence demonstrated a nexus between the mitigating circumstance and the offense. (4) This
nexus requirement is rooted in the following statement from Justice O'Connor's concurring opinion in
California v. Brown (5) that was adopted by the majority of the Supreme Court in Penry I: (6)

 If the sentencer is to make an individualized assessment of the appropriateness of the
death penalty, evidence about the defendant's background and character is relevant
because of the belief, long held by this society, that defendants who commit criminal
acts that are attributable to a disadvantaged background, or to emotional and mental
problems, may be less culpable than defendants who have no such excuse. (7)


 This statement followed the Court's summary of its holding in Eddings (8) that "a sentencer may
not be precluded from considering, and may not refuse to consider, any relevant mitigating evidence
offered by the defendant as the basis for a sentence less than death." (9) Thus, the Supreme Court
established the nexus requirement as the way to determine when evidence that might be considered
mitigating is relevant to the defendant's moral culpability, and, thus also to whether the death penalty is
appropriate for the defendant. While the Supreme Court has not used the term "nexus," this label
encapsulates the Supreme Court's reasoning. 

 This Court has not previously interpreted Penry I to require the mitigating circumstance about
which evidence is presented to be unique, severe, permanent, or a handicap. We have found that
certain evidence "fails to rise to the level of Penry evidence," (10) or is "not the same quality and character
as Penry's." (11) These statements, however, were made in the context of determining whether a nexus
existed between the mitigating circumstance and the defendant's moral culpability, thereby allowing the
jury to find the defendant less culpable by contemporary moral values. (12)

 In Mines, (13) we considered the permanence of the mitigating circumstance to be relevant to a
determination of whether the evidence necessitated a Penry I instruction. However, we considered it
relevant to the issue of whether the jury could give mitigating effect to the evidence within the special
issues and not to whether the evidence demonstrated a nexus between the mitigating circumstance and
the defendant's moral culpability for the crime. (14)

 Regarding the second requirement, the Court in Penry I not only found that the evidence
regarding mental retardation was relevant to the question of deliberateness, but also determined that the
evidence had mitigating relevance beyond the scope of the special issue. (15) The Court held that without
an instruction defining "deliberately" to mean that the jury must consider mitigating evidence fully as it
bears on personal culpability, the Court could not be sure that the jury was able to give effect to the
mitigating evidence through the deliberateness question. (16) The Court determined that the evidence was
also relevant to the future dangerousness question, but only as an aggravating factor, placing the
mitigating relevance beyond the scope of the special issues. (17) The Court cited the concurrence from
Franklin (18) stating that an Eighth Amendment analysis is required if mitigating evidence is introduced
that is not relevant or that has relevance beyond the scope of the special issues. (19)

 Although our Penry I decisions may be consistent with those of the Fifth Circuit, the Fifth
Circuit's decisions are not necessarily consistent with our precedent. In addition to the nexus and
scope requirements we have applied to Penry I cases, the Fifth Circuit has imposed an independent,
multi-faceted requirement that the evidence must demonstrate that the mitigating circumstance
constitutes a uniquely severe permanent handicap. Though we have interpreted Penry I narrowly, I do
not believe we have, nor do I believe it should be, interpreted as narrowly as the Fifth Circuit has done. 
The majority and concurrence appear to ignore our precedent in favor of the Fifth Circuit's Penry I
test. I think this is a grave injustice. While the factors involved in the Fifth Circuit's independent
requirement may be helpful to consider in determining whether a defendant's evidence meets the nexus
and scope requirements, as they were in Penry I, they should not be determining factors. Such an
interpretation undermines the reasoning in Penry I, because a defendant whose mitigating evidence
meets the nexus and scope requirements may still be deprived of a supplemental instruction so that the
jury is precluded from considering and giving effect to evidence relevant to the defendant's moral
culpability for the offense. 

 Our precedent, without adopting the Fifth Circuit's additional independent requirement, does
not suggest that all nullification instructions are constitutionally infirm in all cases in which the defendant
offers any mitigation evidence. The mitigating evidence must meet the nexus and scope requirements. 
Good character evidence would not usually meet the nexus requirement, whereas evidence of the
defendant's age would not usually meet the scope requirement. These two requirements, without more,
have been effective at limiting the application of Penry I to cases to which the Supreme Court's
reasoning in Penry I applies. 

 For example, in Richardson, we found that Richardson made no evidentiary showing that either
his alleged childhood experiences of poverty, parental neglect, illiteracy, and possessing a speech
disorder, or the alleged fact that his mother taught him to shoplift, tended to excuse his capital crime. 
We stated that our conclusion might be different if Richardson had presented evidence that his mother
had taught him to kill or commit other crimes of violence, or if his capital crime had begun as a robbery. 
Evidence of this nature might, from the viewpoint of society, tend to excuse the defendant's criminal
behavior because the crime was caused in part by a personality that was damaged through no fault of
his own. (20) 

Applying Penry I to Smith's evidence

 Unlike in Richardson, in this instance, the offense began as a robbery, and Smith's father had, if
not taught his son to steal, modeled such behavior to the extent that Smith copied his father's behavior
both at home and at school by taking things that did not belong to him. In addition to stealing, his father
demonstrated on at least one occasion that it was acceptable behavior to threaten someone with bodily
harm in an attempt to obtain another's property. Although the record does not reflect precisely when
certain events occurred in his household, Smith was nineteen years old at the time of the offense, so
there was not a substantial length of time separating his childhood experiences from his criminal
behavior. In fact, he was still living with his mother. In short, the record contains evidence from which
a rational jury could conclude that Smith's criminal conduct was in some way attributable to his
unfortunate childhood experiences. (21) The jury, applying contemporary moral standards, could
rationally have found Smith less morally culpable for his behavior than if he had not had such childhood
experiences. I would therefore find Smith's evidence provided a sufficient nexus. 

 Under the first special issue, evidence of Smith's troubled childhood, if relevant at all without
an additional definition of deliberately defined in terms of moral responsibility, would only be
aggravating. The evidence may indicate that Smith acted deliberately, although perhaps unaware of the
influence that his background had on his deliberations, in deciding to participate in the robbery and
murder. Under the second special issue, the evidence, again, could only be aggravating. The evidence
would indicate that Smith's unhappy background did in fact pervade his personality to such an extent
that it continued to affect his behavior and choices, which the record reflects may have escalated in
violence over the years. The jury could have determined that Smith's damaged personality could
nevertheless be rehabilitated or that his behavior in response to his childhood was due in part to his
youth or the proximity of his home-life experiences to the offense. However, if the jury determined that
growing out of his youth would not remove the indelible influence of his childhood and he would 
therefore present a future and continuing danger to society and yet believed that the explanation for his
behavior made the death penalty inappropriate, the jury could not have expressed this view through the
special issues. Thus, such evidence could not be given a mitigating effect by the jury's answers to the
special issues, and Smith was entitled to an additional instruction providing the jury with a vehicle to
give effect to his mitigating evidence. 

 The jury might have concluded, as the majority suggests, that evidence that Smith's behavior in
school was often "exemplary" despite applicant's limitations and difficulties indicated that Smith could
learn from his mistakes and evaluate the consequences of his actions. However, the jury may also have
concluded that evidence that his often "exemplary" behavior was increasingly interrupted with disruptive
and even criminal behavior, indicated that try as he might, Smith was not able, as hopefully people in
general are able to do, to control his impulses and surmount and learn from his negative experiences.
The jury did not need an expert witness to draw this reasonable conclusion from them. 

Penry II's holding - unconstitutional nullification instruction

 Unlike the majority, I do not find that the nullification instruction Smith received is significantly
distinguishable from the one reviewed by the Supreme Court in Penry II. None of the differences
between the instructions in Penry II and the instant case alter the fundamental aspects of the vehicle that
was provided to the jury in an attempt to allow the jury to consider and give effect to the defendants'
mitigating evidence. This vehicle, not merely the description of it, was at the heart of the Supreme
Court's reasoning in determining that the instruction in Penry II was insufficient. The Supreme Court
made this clear by assuming the jury could have understood that the instructions operated in the manner
the State argued: by allowing the jury to change to a negative its answer to one of the special issues
based on something other than what the question asked. (22) Therefore, providing the same vehicle in
more explicit terms does not overcome the defects identified in Penry II. 

 Additionally, the same contradiction between the verdict form and the supplemental instructions
exists here as in Penry II. (23) The verdict form still contained only the language of the special issues. 
Even if the nullification instruction clearly trumped the instructions regarding how to answer the special
issues, a juror could have reasonably believed that following the instructions would violate the juror's
oath to render a true verdict. A juror believing this could have reasonably concluded that there was,
therefore, no effective vehicle for expressing the view that Smith did not deserve a death sentence
because of his mitigating evidence.

 The majority focuses on the use of mandatory language used in Smith's instructions versus the
permissive language used in the instructions given to Penry. Although I find mandatory language in
Penry's instructions equivalent to that in Smith's, I find no merit in this argument because making it
mandatory rather than permissive to return a false answer makes the answer no less false. Such an
answer would be given in violation of the juror's oath to render a true verdict, when the verdict form
contained only the language of the statutory special issues. 

 Even if Smith's nullification instruction is more similar to the instruction in Robertson than to the
one in Penry II, the Fifth Circuit did not determine that such a nullification instruction would be sufficient
where Penry I evidence exists. (24) In its en banc opinion on rehearing, the Fifth Circuit reasoned that the
nullification instruction was redundant in Robertson's case because it determined that the jury could give
effect to the mitigating evidence within the scope of the special issues. (25) In the original panel opinion on
remand, the Fifth Circuit did not determine whether Robertson was entitled to a Penry instruction; it
found Robertson's instructions fell prey to the same defects the Supreme Court identified in Penry II. 
The statement in Robertson, quoted by the majority, does not support the majority's conclusion that a
distinction in the wording of the instruction cured the defects identified in Penry I. That quote refers to
the Fifth Circuit's reasoning that because the answers to the special issues would be the same
regardless of the supplemental instruction where the mitigating evidence could be considered within the
scope of the special issues, there would be no potential for contradiction and the jury would not be
forced into the position of falsely answering "no" to the supplemental instructions.

 It also does not follow that "if Robertson was not entitled to relief under Penry II, then
applicant is not entitled to relief." Robertson was remanded to the Fifth Circuit by the Supreme Court
after Penry II because Penry II is applicable to cases beyond Penry's. The Fifth Circuit had previously
affirmed Robertson's death sentence based on the appropriateness of the nullification instruction. 
However, after Penry II, whether Robertson's nullification instruction was sufficient as to Robertson's
evidence was called into question. We stayed Robertson's execution in light of our pending review of
Smith. 

 I also note that while the Fifth Circuit said, in its en banc opinion in Robertson, that Texas trial
courts "could not craft entirely new jury interrogatories, because the precise questions had been written
by the state legislature," (26) the same year that we approved of the trial courts' use of nullification
instructions in Fuller, we also determined it was not error for trial courts to have submitted judicially-crafted jury interrogatories in an effort to comply with Penry I's mandate. (27) 

There existed a reasonable likelihood that the jury, under oath to return a true verdict, applied the
nullification instruction in a way that precluded them from giving effect to Smith's mitigating evidence. 

 Based on the Supreme Court's reasoning in Penry II, I would conclude that the nullification
instruction Smith received would not be a sufficient vehicle, under Penry I, to allow the jury to give
effect to the defendant's mitigating evidence relevant beyond the scope of the special issues.

 Because the mitigating value of Smith's evidence could not be considered and given effect
within the special issues and the jury was not provided with a sufficient vehicle for expressing its
reasoned moral response to his evidence, the Texas capital punishment statute operated in an
unconstitutional manner as applied to Smith. But for his failure to object to the nullification instructions
at trial, Smith would be entitled to a new punishment hearing. 



DELIVERED APRIL 21, 2004

PUBLISH
1. Penry v. Lynaugh, 532 U.S. 782 (2001) (Penry II).
2. Fuller v. State, 829 S.W.2d 191, 209 (Tex. Crim. App. 1992).
3. See Penry I, 492 U.S. 302.
4. Goss v. State, 826 S.W.2d 162 (Tex. Crim. App. 1992). See also Zimmerman v. State, 881 S.W.2d 360 (Tex.
Crim. App. 1994); Earhart v. State, 877 S.W.2d 759 (Tex. Crim. App. 1994); Mines v. State, 888 S.W.2d 816 (Tex. Crim.
App. 1994); Satterwhite v. State, 858 S.W.2d 412 (Tex. Crim. App. 1993); Muniz v. State, 851 S.W.2d 238 (Tex. Crim.
App. 1993); Richardson v. State, 879 S.W.2d 874 (Tex. Crim. App. 1993); Richard v. State, 842 S.W.2d 279 (Tex. Crim.
App. 1992); Nobles v. State, 843 S.W.2d 503 (Tex. Crim. App. 1992); Lackey v. State, 819 S.W.2d 111 (Tex. Crim. App.
1989), opinion on motion for rehearing, 816 S.W.2d 392 n.10 (Tex. Crim. App. 1991); Gribble v. State, 880 S.W.2d 65
(Tex. Crim. App. 1990) (plurality opinion) (suggested requirement). 
5. California v. Brown, 479 U.S. 538 (1987).
6. See Lackey, 819 S.W.2d at 135 n. 10. 
7. Penry I, 492 U.S. at 319. 
8. Eddings v. Oklahoma, 455 U.S. 104 (1982).
9. Penry I, 492 U.S. at 318. 
10. Cantu v. State, 842 S.W.2d 667, 693 (Tex. Crim. App. 1992); Earhart v. State, 823 S.W.2d 607, 632 (Tex.
Crim. App. 1991). 
11. Goss v. State 826 S.W.2d 162, 166 (Tex. Crim. App. 1992).
12. Richardson v. State, 879 S.W.2d 874, 885 (Tex. Crim. App. 1993). 
13. Mines v. State, 888 S.W.2d 816, 817-818 (Tex. Crim. App. 1994). 
14. Id. 
15. Penry I, 492 U.S. at 322. 
16. Penry I, 492 U.S. at 322. 
17. Penry I, 492 U.S. at 323. 
18. Franklin v. Lynaugh, 487 U.S. 164 (1988).
19. Penry I, 492 U.S. at 321.
20. Id.
21. See Richard v. State, 842 S.W.2d 279, 283 (Tex. Crim. App. 1992). 
22. Penry II, 532 U.S. at 798-99. 
23. Penry II, 532 U.S. at 799.
24. Robertson v. Cockrell, 325 F.3d 243, 258 (5th Cir. 2003), cert. denied, 124 U.S. 28 (2003).
25. Robertson, 325 F.3d at 257.
26. Robertson, 325 F.3d at 248-49.
27. State v. McPherson, 851 S.W.2d 846, 850 (Tex. Crim. App. 1992).