### *In re* WOODWORTH *et al.*

(*Supreme Court, Special Term, Ontario County.* October 24, 1891.)

1. ELECTIONS AND VOTERS—NOMINATIONS—CAUCUSES—REGULARITY OF ELECTIONS OF DELEGATES—CONDUCT OF NOMINATING CONVENTION.

Laws N. Y. 1890, c. 262, § 2, provides that nominations to public office may be made through the medium of a convention or primary meeting, which is defined to be an organized assemblage of voters or delegates, representing a political party which at the last election before the meeting polled at least 1 per cent. of the entire vote cast in the division or district for which the nomination is made. In a certain county the Republican party was divided into the M. faction and the P. faction, each of which, in a certain town of the county, held a caucus, and appointed a town committee. On judicial inquiry at the time into the regularity of the rival caucuses, the court decided in favor of the P. faction, and no appeal was taken from the decision. Afterwards two caucuses were held in the town by the rival factions, each in pursuance of a call from its town committee. The county committee recognized the call from the town committee of the M. faction, notwithstanding the adverse adjudication. At each of the caucuses so called delegates were elected to represent the town in the county convention. *Held*, that the delegates elected by the P. faction were entitled to represent the town.

2. SAME.

In the town of V. one caucus was held, at which delegates representing the P. faction received a majority of the votes, and were declared elected. Their credentials were duly signed, and no objection was made until they presented themselves to the county convention. *Held*, that they, and no others, were entitled to represent their town in the convention.

3. SAME.

In the town of F. it was customary for the caucus to be called by the secretary of the last preceding one, and, there having been two caucuses held, there were two persons claiming to be secretaries. They both united in a call for a caucus to be held in a certain place, attached to which call was the name of one I., the member of the county committee for that town. At the appointed time I., who belonged to the M. faction, in company with the secretary of the same faction, and two or three other persons, locked himself in a room, and denied admission to all others, including M., the secretary of the P. faction. A window was raised, and I., without any authority from M., proceeded to organize the caucus, and nominated a chairman, whom he declared elected, without giving any one an opportunity to vote against him. The chairman assumed the chair, and a hat was placed in the open window, into which votes were cast. In the mean time the voters outside the building, at the instance of M., organized a caucus, and elected a chairman and secretaries, who took the oath of office and entered upon their duties. At each caucus delegates were elected by ballot, those at the M. caucus receiving 79 votes, and those at the P. caucus receiving 130. At the former no poll-list was kept, while the P. caucus observed all the requirements of law, and kept a poll-list, the correctness of which was not denied. *Held*, that the delegates elected by the P. caucus were entitled to the seats in the county convention.

4. SAME.

In the town of T. it was the custom to meet in caucus at the call of the town committee, which was composed of one B., who was of the P. faction, and S., who was of the M. faction, and another. B., supposing he had authority to do so, issued a call for a caucus to be held at Tyre City, and caused notices to be posted, and published in a newspaper. Learning that the call was not authorized, he took steps to revoke it, and give notice that the call would be held at Magee's Corners. In the mean time another call, purporting to have been made "by order of the committee," was published for a caucus to be held at Magee's Corners. Afterwards the committee met, and agreed that the caucus should be held at Tyre City, and some of the previous notices were taken down. On the evening appointed, B. went to Magee's Corners, where he found S., the member of the committee belonging to the

M. faction, engaged in lighting the lamps in the hall where some supposed the cau-
cus was to be held. The caucus was there called to order, and duly organized, and
70 votes cast for delegates of the P. faction. Before this, S. and another member
of the M. faction had disappeared, and it was afterwards found that they went to
Tyre City, and with an attendance of 25 persons elected a delegation of the M. fac-
tion. *Held,* that the P. delegates were entitled to the seats in the convention.

**5. SAME.**
Previous to the time appointed for the meeting of a county convention to nomi-
nate candidates for public office, the county committee, composed, with one excep-
tion, of persons in sympathy with the M. faction of the Republican party, held
a meeting, and decided to place on the roll of delegates names of persons who
had no right to sit in the convention, and that a certain pretended delegate of
that faction should be declared chairman. This was done, and the delegates of the
P. faction of the party were not given an opportunity to be heard. They thereupon
convened elsewhere, and duly nominated certain persons. The P. faction was
composed of at least 30 delegates, who were duly and fairly elected, while there
were in the convention run by the M. faction at most only 20 delegates who were
elected. *Held,* that the nominees of the convention held by the P. faction were the
proper nominees of the party, the delegates of the P. faction, and not of the M.
faction, having been the "delegates representing" the Republican party, within
the meaning of Laws N. Y. 1890, c. 262, § 2; and that the court should compel the
clerk to print their names on the ballots.

At chambers. Application by Hugh H. Woodworth and others to compel
the clerk of Seneca county to print their names, as the regular nominees of
the Republican party, on the ballots to be used at an approaching election.
Application granted.

*Frederick L. Manning,* for application.     *William B. Woodin,* opposed.

ADAMS, J. This is a proceeding under section 13, c. 262, Laws 1890, to
compel the clerk of Seneca county to print upon the official ballot to be used
at the approaching election the names of certain parties claiming to be regu-
larly nominated candidates of the Republican party of that county, and its
determination involves an adjudication between rival factions of the party,
each claiming to be the regular organization. This simple statement of the
nature of the duty imposed is sufficient to indicate that it is one from which
any judicial officer would gladly escape were it possible to do so without dis-
regarding the plain mandate of the law-making power of the state. This,
however, cannot be done, and it becomes necessary, therefore, to meet the
questions presented precisely like any other questions of fact and law, and
without the slightest regard for the consequences which may result from the
conclusion to be reached.

As has already been suggested, the parties in interest represent two oppos-
ing factions in the Republican organization of Seneca county, each of which
has held a county convention at which candidates were placed in nomination
for local offices; each of which claims to be the only regular representative of
the party; and each of which has duly filed with the clerk of the county of
Seneca a certificate in apparent conformity with the provisions of the act in
question. To the certificates thus filed objections have been made within the
time specified, and it thereupon became the duty of the clerk of the county,
in the first instance, to pass upon the validity of the questions thus raised.
This duty has been fulfilled by him, and the office of this proceeding is to re-
view his determination.

As has just been stated, the certificates of nomination filed by the respect-
ive parties, upon their face, appear to conform, in all respects, to the require-
ments of law, and consequently there is nothing there furnished which can
aid materially in reaching a satisfactory conclusion in the premises. It be-
comes necessary, therefore, to examine the record carefully for extraneous
facts which may throw some additional light upon the subject; but before at-
tempting this it will be desirable to understand precisely what is contemplated
by the act under which this proceeding is instituted. The design of this act
is declared by the legislature to be "to promote the independence of voters at

public elections, enforce the secrecy of the ballot, and provide for the printing and distribution of ballots at public expense," and the means by which this most laudable object is to be attained is expressed in plain and direct terms. It is quite obvious to any intelligent person that, in seeking to purify and elevate our electoral system, not only must the existence of political parties be recognized, but party machinery must, to some extent, and within proper limitations, be utilized. We find, therefore, that the second section of the act in question provides that nominations to public office may be made through the medium of conventions or primary meetings, and it defines a convention or primary meeting to be "an organized assemblage of voters or delegates, representing a political party which, at the last election before the holding of such convention or primary meeting, polled at least one per centum of the entire vote cast in the state, county, or other division or district for which the nomination is made." The language above quoted would seem to indicate pretty clearly that, while recognizing the necessity of political divisions, it was within the contemplation of the legislature that such divisions should manifest themselves through the medium of organizations which should fairly represent the members of such divisions or parties; and, if this be true, then it becomes important that the facts of this case should be inquired into solely with a desire to ascertain, if possible, which, if either, of the two opposing factions is the actual representative of the political party which each claims to represent.

Now, what are the real facts established by the papers read upon the hearing of this motion? It is conceded that the Republican party represents a sufficient proportion of the voters of Seneca county to entitle the names of its candidates to be printed upon the official ballot. It is conceded that the party is divided into two opposing factions, each claiming to be regular, which, for the purposes of this proceeding, may be termed the Mongin and Patterson factions. It further appears that the county of Seneca is composed of ten towns, each of which, according to party usage, is entitled to five delegates in the county convention; that such convention was duly called to meet at Seneca Falls on Monday, the 12th of October, 1891, at 2 o'clock P. M.; that prior to the last-mentioned date primary meetings were held in the several towns in the county for the purpose of electing delegates to represent such towns in said convention; that in six of such towns delegates were elected concerning whose title there was no dispute, and that these six towns were evenly divided between the two factions. In each of the remaining towns, viz., Waterloo, Varick, Fayette, and Tyre, there were, or claimed to be, contesting delegations, and the contests which were thus presented were disposed of by the county convention in a manner to be more specifically noticed later on. It will be seen at a glance, then, that the important and controlling question in the case relates to the regularity of the delegates from these four towns, and to the elucidation of that question let us bend our energies.

In the town of Waterloo two caucuses were held, one in pursuance of a call emanating from a town committee representing the Mongin faction, and the other in pursuance of a call issued by a committee which is supposed to speak for the rival, or Patterson, faction. These separate committees owe their existence to two caucuses which were held prior to the town-meeting in February last, and the regularity of these rival caucuses was the subject of judicial inquiry at that time, which inquiry resulted in an adjudication in favor of the one termed the "Patterson Caucus." This adjudication was apparently accepted by both sides as a finality, as no appeal therefrom was taken; but, notwithstanding this, the committee appointed at the Mongin caucus, of which Mr. Mongin is a member, still assumes to discharge functions which it does not possess; and, in utter disregard of the order made last winter, called a caucus for the town, which caucus was held at the time and place named in the call, and those who attended the same went through

the form of electing Mr. Mongin and four other persons to represent the town in the county convention. It is true that this call received the sanction of the member of the county committee representing the town of Waterloo, and that in joining therein he claimed to act under the authority and direction of such committee; but it will hardly be claimed that the legislature intended to confer appellate jurisdiction upon so irresponsible a body as a county committee of any political party, and, until some better authority is cited, this tribunal will insist that its former adjudication shall be respected. It is sufficient to say that the Patterson caucus was called by the legally constituted town committee, in accordance with party usage, and that concerning the regularity of the delegates elected there can be no doubt whatever.

In the town of Varick but one caucus was held, and as to the regularity of the call there was no question made. At this caucus two tickets were voted for, upon which the names of delegates representing the rival factions were printed, respectively. One hundred votes were cast, of which number the Patterson delegates received a majority of four, and were declared duly elected. Their credentials were signed by the chairman and both secretaries of the caucus, and no one, so far as these proceedings disclose, appears to have raised any question as to their election until they presented themselves to the county convention, as hereinafter stated. The opposing affidavits do not even refer to the vote for delegates to the nominating convention, but confine themselves to a statement of what took place when delegates to a prior convention were voted for. This is set forth with considerable detail, and with the apparent intention of conveying the impression that the proceedings thus detailed related to the matter under consideration, whereas they bear no relation whatever to it.

In the town of Fayette it is conceded to have been customary for the caucus to be called by the secretary of the last preceding one, but in the year 1890 there were two caucuses held in this town, and consequently there were two persons claiming to be secretaries. However, they both united in a call for a caucus to be held at the Franklin House on the 14th of July last, at 12 o'clock noon, and attached to such call also appeared the name of Fred M. Illick, the member of the county committee of the town of Fayette. At the appointed time Mr. Illick, who belongs to the Mongin wing of the party, in company with the secretary representing the same interests, and two or three other persons, locked himself in a room, and denied admission thereto to all others, including Mr. Marshall, the other secretary. A window was raised, and Mr. Illick, without any authority from Marshall, proceeded to organize the caucus, and to that end placed in nomination for chairman one Welden G. Cook. He declared the motion carried, without giving any one an opportunity to vote against it, and Mr. Cook, who was in the room, apparently prepared for what was to follow, assumed the chair, and a hat was placed in the open window, into which votes were cast. In the mean time the voters outside the building, after vainly endeavoring to be heard in opposition to the motion of Illick, organized a caucus at the instance of Marshall; elected a chairman and secretaries, who took the oath of office, and entered upon their duties. At each caucus delegates were elected by ballot,—those at the caucus inside the building received 79 votes; and those at the other, 130 votes. There is some evidence tending to show that at the Mongin caucus a handful of ballots was cast by one person. This, however, is denied, and, as no poll-list was kept, it is impossible to determine the truth of this claim. It is a somewhat suggestive fact, however, that affidavits are produced from only three persons who swear that they voted at this caucus. At the Patterson caucus a poll-list was kept, and was produced upon the hearing, and no contention is made that the same is not in all respects correct. There is nothing to show which of the two secretaries represented the regular caucus held last year, but, inasmuch as the Patterson faction, at the caucus in ques-

tion, observed all the requirements of the law relating to the holding of primaries, (see chapter 265, Laws 1887,) and the Mongin caucus did not, and inasmuch as the former polled nearly two-thirds of the combined vote, its claims to regularity cannot be successfully disputed.

The circumstances surrounding the Tyre caucus are somewhat more complicated in their character. In this town it appears to be the custom of the party to meet in caucus at the call of the town committee. This committee is composed of Albert Barrett, Nelson Seekel, and Emory Story. The first-named gentleman favored holding the caucus at a place called "Tyre City;" and the last-named favored Magee's Corners, about five miles distant from Tyre City; and Mr. Seekel was indifferent between the two places. Upon the supposition that he was authorized so to do, Mr. Barrett issued a call for Tyre City, and caused notices to that effect to be posted in various places in the town, and the same was also published in the Seneca Falls Journal, a newspaper friendly to the Patterson faction. Learning that such call was not in fact authorized, Mr. Barrett tells us that he took steps to revoke the call thus made, and to notify the electors of the town that the caucus would be held at Magee's Corners. In the mean time another call, purporting to have been made "by order of the committee," was published for a caucus to be held at Grange Hall, Magee's Corners, on October 10, 1891, at 7 P. M., which was the same hour for which the Tyre City caucus had been called, and this notice was likewise posted in various places in the town. At some time on the 2d of October the committee conferred together, and it was agreed that the caucus should be held at Tyre City, and some of the notices for the other caucuses were thereupon taken down. It does not distinctly appear when it was that Mr. Barrett discovered that he had made the call for Tyre City without authority, in consequence of which he took the above-mentioned steps to correct the mistake; but, inasmuch as such a call is dated October 2d, it may fairly be inferred that it was after the conference which is claimed to have taken place between the members of the committee. However this may be, on the evening of October 10th, Mr. Barrett went to Magee's Corners, where he found Emory Story, the member of the committee who represented the Mongin faction, present and engaged in lighting the hall. At the appointed hour the caucus was called to order, and duly organized, and 77 ballots were cast, all of which were in favor of the Patterson delegation; but, before the proceedings were opened, Mr. Story, and Mr. Mongin, who was also present earlier in the evening, had disappeared, and it was afterwards ascertained that a caucus was also held at Tyre City, which was attended by some 25 persons, at which delegates were elected favorable to the Mongin faction, and that Mr. Story was one of the delegates so elected. It will thus be seen that the question as to which of the Tyre delegates were "regularly elected" is not entirely free from doubt, and yet, when all the facts are considered, it is difficult to see what motive there could have been for the Patterson faction, which controlled the votes of three-fourths of the voters, to resort to any questionable methods to obtain the control of the caucus. In this connection it may be observed that Mr. Story makes no explanation of his presence at the Grange Hall in Magee's Corners, which is inconsistent with his claim that the caucus was to be held at some other place; nor does he tell us why, just prior to the organization of the caucus at Magee's Corners, he slipped out, drove over to Tyre City, and participated in a caucus there, as he admitted to Mr. Barrett he did, without informing the voters who were assembling at the former place where the regular caucus was to be held.

Having now stated, as briefly as may be, the circumstances attending the holding of the primaries, we are brought to a consideration of what took place at the county convention on October 12th. The meeting of this body was appointed to be held at a place called "Johnson's Hall," in the village of Seneca Falls. Previous to the hour appointed for the convening of the con-

vention, a meeting of the county committee was held. This committee, with a single exception, was composed of persons in sympathy with the Mongin wing of the party, and at the meeting in question it was determined to place upon the roll of delegates the names of the Mongin delegates from the towns of Waterloo, Fayette, and Tyre, while the delegation from the town of Varick was made to consist of five Patterson delegates together with five other persons, who made no pretense to an election by any caucus whatever, and each of said delegations was given the privilege of casting one-half a vote. It was further determined that the chairman of the committee should call the convention to order, and declare J. B. H. Mongin, of Waterloo, a pretended delegate, whose title was absolutely without foundation, its chairman. It was also determined that no one should be admitted to the hall unless provided with tickets furnished by the committee, and, to carry this provision into effect, policemen were stationed at the door. As thus constituted, the convention, when it assembled, consisted of 15 Mongin and 15 Patterson delegates whose election was not contested; 10 Mongin delegates from the towns of Waterloo and Fayette, who, as it has been made already to appear, had no right upon the floor of the convention; 5 Mongin delegates with half a vote from the town of Varick, who could not, under any circumstances, make any just claim to an election; and 5 Mongin delegates from the town of Tyre, concerning whose election there was, to say the least, grave doubt. The programme thus outlined by the action of the county committee was carried out to the letter, and, when an attempt was made on behalf of the Patterson faction to substitute the name of a delegate whose title to a seat was uncontested for chairman of the convention, the motion was not entertained by the chairman of the county committee. A committtee upon contested seats was then appointed, which committee, within half an hour after its appointment, and without affording an opportunity to any one to be heard, reported in favor of seating the delegates placed upon the roll by the county committee. At this point in the proceedings the delegates from the towns of Ovid, Romulus, Varick, and Junius withdrew from the convention, and organized a separate convention in another place, which was participated in by regularly elected delegates from the towns of Waterloo and Fayette, and also by the Patterson delegates from the town of Tyre, and proceedings were had which resulted in the nomination of persons whose names it is demanded in these proceedings shall be printed upon the official ballot. This body was composed of at least 30 delegates who were duly and fairly elected, while the Johnson Hall convention contained, at most, only 20 whose election, by any strength of the imagination, can be claimed to be valid. It would seem, therefore, that within the letter as well as the spirit of the act in question the former body constituted "an assemblage of voters or delegates representing" the Republican party of Seneca county.

But it is insisted that a political convention is a law unto itself, and that whatever methods it adopts for its own government are conclusive, and cannot be made the subject of judicial inquiry. To a certain extent this contention may be, and doubtless is, true. It certainly was presented with the most consummate force and ability by one whose experience in and knowledge of such matters lends great weight to his opinions; but, where the duty is cast upon courts and judges of determining the regularity and fairness of political methods, those methods must be subjected to the same tests as would those of any other body of men whose good faith is questioned, and no court or judge would be justified in sustaining them when found to be inconsistent with that degree of sound morals which must characterize an ordinary affair of business, even though they be recognized and approved by senatorial and state conventions of the same political organizations. The trend of public opinion, as well as of legislation, at the present time, appears to be in favor of a radical reform in our political methods, and it is the plain duty of all good

citizens, and especially those clothed with judicial authority, to encourage such a sentiment with all the force they can command. The order asked for is granted.